## In re SAXON COFFEE CO.

District Court, D. Maryland.   December 8, 1927.

### No. 4656.

**Bankruptcy 178(1)—Assignment by bankrupt before insolvency of accounts receivable over which bankrupt retained control held invalid.**

Assignment to petitioner by bankrupt before insolvency of accounts receivable to secure notes *held* not valid, nor sufficient to entitle petitioner to priority in assets of bankrupt, where bankrupt retained entire control and dominion of assigned accounts.

In Bankruptcy. In the matter of the Saxon Coffee Company, bankrupt. Petition by the Baltimore Trust Company, setting up claim for priority in assets of bankrupt. Petition was dismissed by the referee, and the Trust Company files a petition for review. Petition dismissed.

Semmes, Bowen & Semmes, of Baltimore, Md., for petitioner.

Wm. Edgar Byrd, of Baltimore, Md., for trustee.

SOPER, District Judge. The Baltimore Trust Company filed an intervening petition in this case, setting up a claim for priority in the assets of the bankrupt, based upon a promissory note for $2,000, dated December 30, 1925, and payable 30 days after date, secured by an assignment of accounts receivable. The matter was referred to the referee, who decided that the petition should be dismissed. Thereupon the Trust Company filed a petition for review.

The Coffee Company was adjudicated a bankrupt upon a petition in bankruptcy filed on January 6, 1926. For approximately six months prior thereto, the Trust Company had required the Coffee Company to secure its notes by the assignment of accounts receivable. The Trust Company and its predecessor, the Atlantic Trust Company, had extended credit to the Coffee Company since 1921. During the year 1925, it appeared to the Trust Company that the loan was not particularly desirable, unless guaranteed by some security. Accordingly, on July 31, 1925, when the loan amounted to $3,250, a new arrangement was made between the parties, which is the subject-matter of this controversy. The note was taken for 30 days, secured by an assignment of accounts, wherein it was stated that the Coffee Company had sold certain listed goods, under lien to the Trust Company, and undertook to act as agent in collecting the proceeds, and to pay the same to the Trust Company as received. From this time until bankruptcy, a 30-day note was given on the 1st of each month. The accounts assigned in security of the note of the preceding month were released and a new assignment was made. Certain payments on account of the principal of the note were made from month to month. The last note of December 30, 1925, for the sum of $2,000, was secured by accounts aggregating $2,250. The Trust Company claims the right to the proceeds of these accounts in payment of the indebtedness.

The validity of the assignment depends upon whether or not the arrangement between the bankrupt and the bank was such that the bankrupt retained unfettered dominion over the assigned accounts and their proceeds. There are two facts upon which the bank relies to show that it, rather than the bankrupt, retained control of the assigned accounts. The first is that, in the assignment, the bankrupt agreed to pay the proceeds of the accounts to the bank, and the second that, according to a calculation of the bank, the accounts assigned respectively with the 30-day notes during the last 6 months of 1925, had an average due date of 45 days, and therefore presumably would not be paid until after the due dates of the notes. As the circumstances turned out, however, neither the agreement nor the calculation was reliable. Indeed, so far as the agreement on the part of the bankrupt to pay the proceeds of the collections to the bank is concerned, it may well be doubted whether it was intended by the parties to be observed. In any event, it never was observed. The accounts were collected by the bankrupt, and the proceeds thereof were used by it in its business as freely as if the assignments had

never been made. Furthermore at least 75 per cent. of the accounts were actually paid by the debtors within the 30-day period during which the notes ran. The bankrupt allowed a discount of 1 or 2 per cent. for payment in 10 days, of which discounts the debtors usually took advantage. At no time during the period did the bank interfere with the collections, or concern itself therewith, leaving them entirely in the hands of the bankrupt. The president of the Coffee Company testified, without denial, that, before he entered into the arrangement for the assignment of the accounts monthly, he was assured by the bank that there would be no publicity to embarrass the company with its customers, and that it was understood that the Trust Company would not interfere with the handling or use of the money by the Coffee Company. These facts require the dismissal of the Trust Company's petition, and the affirmance of the referee's decision, under the cases in this circuit of Chapman v. Emerson (C. C. A.) 8 F.(2d) 353, and In re Almond Jones Co. (C. C. A.) 13 F.(2d) 152, and (C. C. A.) 16 F.(2d) 986.

The case at bar is certainly closer in its facts to In re Almond Jones Co. than to Chapman v. Emerson. The petitioner seeks to distinguish it from the first-mentioned case chiefly on the ground that there the borrower promised only to disposit the collections in the bank, whereas in the case at bar the Coffee Company promised to pay the collections to the bank. This distinction might be of more importance, were it not for the admitted fact that neither party to the contract paid any attention whatsoever to the promise, but, on the contrary, the money was collected and retained by the borrower. The petitioner relies upon the statement of facts in Chapman v. Emerson, wherein it appears that, although there was an agreement by the bankrupt to pay over the proceeds of the accounts to the lender, nevertheless this promise was not always kept, but the collected accounts were usually replaced by those of later date. But it should not be overlooked that, in Chapman v. Emerson, Emerson was at one and the same time a representative of the lender, and an active officer in charge of the borrower's business. He was constantly in a position to know what was going on, and to exercise the agreed control over the collections. While this situation justified a critical scrutiny of the transaction, it was nevertheless held that the assignments were made in good faith for a present consideration. The Circuit Court of Appeals in its opinion made the express statement, reiterated in the later case of In re Almond Jones Co., that the transaction was on the border line, and went as far as it was proper to go. The present case goes much further.

The petition must be dismissed, and the referee sustained.